UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JAMES HUGHES | CIVIL ACTION |
| VERSUS | NO. 15-2941 |
| LIFE INSURANCE COMPANY OF NORTH AMERICA | SECTION "L" (3) |

ORDER & REASONS

Before the Court is Defendant Life Insurance Company of North America's ("LINA")
Motion for Summary Judgment, R. Doc. 20. Plaintiff, James Hughes, opposes the Motion, R. Doc.
29, and has filed a cross Motion for Judgment as Matter of Law, R. Doc. 24. Defendant filed an
opposition to Plaintiff's Motion. R. Doc. 30. Having reviewed the parties' briefs, the applicable
law, and the statements made at oral argument, the Court now issues this Order & Reasons.

I.      BACKGROUND

This case involves a claim for disability benefits and the continuance of a life insurance
policy. Plaintiff Hughes was employed by Power and Control Systems, Inc. as an electrician. He
is a participant and beneficiary of an ERISA plan created by his employer, and an insured
participant of a group policy issued by Life Insurance Company of North America ("LINA"). R.
Doc. 1 at 1. Hughes stopped working on April 16, 1999, due to T10 paraplegia. Hughes is
permanently paralyzed and bound to a wheelchair. LINA initially approved Hughes's disability
benefits, but later terminated his benefits on February 8, 2011. LINA claims termination occurred
because Hughes failed to provide requested documentation to demonstrate his continued
entitlement to benefits. R. Doc. 1 at 2. Hughes filed an appeal, which LINA denied because Hughes

1

failed to appeal within 180 days. Hughes argues the 180-day deadline cited by LINA is inapplicable, because such a deadline is not contained within the policy. R. Doc. 1 at 2. Hughes filed suit and seeks all benefits due in the past and future under the Plan (including pre- and post-judgment interest), attorney's fees, and costs. R. Doc. 1 at 3–4.

Defendant Life Insurance Company of North America ("LINA") timely answered on October 26, 2015. R. Doc. 8. LINA asserts a number of affirmative defenses based on ERISA, including ERISA preemption; the limited scope of ERISA review; and ERISA exhaustion requirements. LINA also asserts affirmative defenses based on the terms of the policy at issue. Specifically, LINA asserts that Hughes failed to comply with the "proof of loss" provision of the policy. R. Doc. 8 at 8. The proof of loss provision requires a claimant to timely provide proof of continued disability and of regular physician care upon request. R. Doc. 8 at 8.

## II.        PRESENT MOTIONS

### A.  Defendant LINA's Motion for Summary Judgment

Defendant argues it is entitled to Summary Judgment dismissing Plaintiff's lawsuit because Plaintiff failed to timely exhaust his administrative remedies and file a timely suit. LINA agrees Hughes was a covered participant in a LINA benefit plan and became disabled as a result of an accident in 1999. R. Doc. 20-1 at 1-2. Since that date, his benefits have been terminated four times. R. Doc. 20-1 at 5. In each of the prior terminations, Hughes followed the procedures for appealing the decision and his benefits were reinstated. *Id*. However, in the latest termination, LINA contends he did not follow plan procedures for appeal, and therefore failed to timely exhaust

his administrative remedies. *Id.* In addition, LINA asserts that this suit was filed outside the three-year contractual limit for seeking judicial review of a decision to terminate benefits.

First, LINA outlines the requirements of the plan. LINA avers the policy at issue requires all participants to provide updated medical and income information to the insurer if such information is requested. R. Doc. 20-1 at 3. If a participant's benefits are terminated, the individual has 180 days to initiate an appeal, and any suit contesting a benefits decision must be filed within three years of the date proof of loss was required. R. Doc. 20-1 at 4.

Next, LINA explains how Hughes's benefits were terminated, and how he filed his eventual appeal and this lawsuit. According to LINA, the insurer requested information regarding his present disability status from Hughes in November, and again in December, of 2010. R. Doc. 20-1 at 5. When LINA did not receive a response, they sent Hughes a termination letter in February, 2011. *Id.* This letter explained why benefits were being terminated, and described the steps Hughes needed to follow to appeal the decision. R. Doc. 20-1 at 6. Nine months later, Hughes's mother ("Mrs. Hughes") called LINA and explained she had power of attorney over her son, and wished to reinstate his disability benefits. R. Doc. 20-1 at 7. She was advised the time for appeal had passed; consequently, if she wished to file an appeal she needed to explain why just cause existed for the delay. *Id.* Mrs. Hughes explained that her son was currently incarcerated, so she would not be able to obtain the required information, and requested that LINA close the appeal. R. Doc. 20-1 at 9. LINA sent Hughes a letter terminating the appeal on September 12, 2012.

Two years later, Mrs. Hughes again contacted LINA and attempted to reinstate her son's benefits. *Id.* This time, Mrs. Hughes explained no one replied to the February, 2011 termination letter because her son was incarcerated from May to September 2012. R. Doc. 20-1 at 9. Additionally, she explained his pain medication had an adverse impact on his mental capacity, and

3

he was unable to handle his own affairs. R. Doc. 20-1 at 10. In October 2014, LINA reviewed the appeal and found there was no just cause for the delay and notified Mrs. Hughes no additional appeals would be considered. R. Doc. 20-1 at 10.

That same month, Plaintiff's counsel contacted LINA and requested information from Hughes' file. R. Doc. 20-1 at 12. LINA avers that they provided an initial response at that time, and submitted additional information in February 2015. R. Doc. 20-1 at 12. Hughes filed this lawsuit in July, 2015.

LINA contends that Fifth Circuit precedent limits the Court's review of an insurer's decision to deny benefits to the administrative record. (citing *Vega v. National Life Insurance Services, Inc, et al,* 188 F.3d 287 (5th Cir. 1999)). Additionally, LINA explains that under ERISA, employee benefit plans are required to provide "adequate notice in writing" when denying benefits to a plan participant, and provide a "reasonable opportunity . . . for full and fair review" of such denials. (citing 29 U.S.C. § 1133). According to LINA, it sent multiple request to Hughes for additional information regarding his disability status prior to termination. Once LINA decided to terminate benefits, it sent written notice explaining that the termination occurred because it had not received a response, despite multiple attempts to obtain updated information. R. Doc. 20-1 at 16. This communication included information regarding the time limitations for appeal and next steps Hughes needed to take if he wished to appeal the decision. R. Doc. 20-1 at 16.

Defendant contends that per ERISA, Hughes is required to exhaust administrative remedies prior to filing a lawsuit seeking judicial review of the plan administrator's decision. R. Doc. 20-1 at 16-17. Thus, Hughes must have appealed the initial termination within 180 days of the date his benefits were terminated to have exhausted his administrative remedies. R. Doc. 20-1

4

at 17. LINA admits that in some circumstances, failure to exhaust may be excused on equitable grounds, but contends that no such grounds exist in this case. *Id*.

In particular, LINA rejects Hughes's claim that he was unaware of the time limit for appeal because it was not included in his policy. R. Doc. 20-1 at 18. LINA argues that the February, 2011 letter terminating benefits, LINA outlined the appeals process and applicable timelines. Additionally, Hughes had complied with the appeal time limit on three prior occasions. Further, LINA disagrees with Mrs. Hughes' contention that Hughes did not respond to the initial letter because he was incarcerated. LINA claims that if Mrs. Hughes did have power of attorney, there is no reason she could not have obtained the necessary medical and financial records while her son was in prison. R. Doc. 20-1 at 18. Additionally, LINA emphasizes that Hughes was incarcerated from May to September 2012—approximately 15 months after his benefits were terminated. *Id*.

Finally, LINA argues that this action is untimely, as it was filed more than three years after the proof of loss was required by the policy. The policy states that participants have a three year window in which to file a claim. According to LINA, "[c]ontractual limitations periods on ERISA actions are enforceable, regardless of state law, provided they are reasonable." (citing this Court's decision in *Ponstein v. HMO La., Inc.*, 2009 WL 1309737 (E.D. La. May 11, 2009)). Here, Hughes's benefits were terminated in February 2011. He had 180 days to file an appeal, or until August, 2011. According to LINA, the statute of limitation began to run at that point, and any suit would have needed to be filed by August, 2014. However, the suit was not filed until July 2015, which LINA contends was untimely. R. Doc. 20-1 at 24.

### B.  Plaintiff Hughes's Opposition to Motion for Summary Judgment

In his opposition, Plaintiff argues that LINA abused its discretion by imposing a "fictitious" 180-day deadline for appeal, that Plaintiff had good cause for the delay in filing an

appeal, and LINA should be estopped from asserting the three-year statute of limitations to bar Plaintiff's suit. Plaintiff admits that the they'plan administrator's decisions are to be reviewed for abuse of discretion, but avers that "[a]n administrator must have 'substantial evidence' to support its decision to deny or terminate benefits" and "an administrator must discharge its duties solely in the interests of the participants and beneficiaries of the plan." (citing E*llis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 274 (5th Cir. 2004); 29 U.S.C. § 1104(a)(1)). R. Doc. 20-1 at 7-8.

First, Hughes contends that the 180-day deadline is unenforceable because it was not contained in the initial policy, but only in the termination letter. According to Hughes, insurers cannot add contractual terms to insurance policies by including the term in a denial letter. R. Doc. 20-1 at 8. Hughes cites a number of cases in support of this proposition; however, none within the Fifth Circuit.[1] *Id.*

Second, Hughes argues that even if there was a 180-day deadline to file an appeal, there was more than enough reason to find just cause for the delay. Specifically, Hughes contends that he was unable to manage his affairs because of his declining physical and mental health, in addition to his incarceration. R. Doc. 20-1 at 11. During the relevant time period, Hughes's father was also seriously ill, and suffered multiple heart attacks before he died. Finally, his mother, who is responsible for raising her grandchildren, was diagnosed with Parkinson's. R. Doc. 20-1 at 11.

---

[1]     Plaintiff cites the following: *Merigan v. Liberty Life Assurance Co. of Boston,* 826 F.Supp.2d 388, 396–97, (D.Mass. 2011) (concluding that an appeal deadline contained in the SPD but not in the written instrument constituting the plan is unenforceable under *Amara* ); *Shoop v. Life Ins. Co. of N. Am.,* 2011 WL 3665030, at *5 (E.D.Va. 2011) ("[E]ven though the SPD states that [defendant] has sole discretion to interpret the terms of the Policy, the fact that this language is not included in the Policy itself, means [that the defendant's] administrative interpretation of the Policy terms is due no deference."); *Spain v. Prudential Ins. Co. of Am.,* 2010 WL 669866, at *6 (S.D.Ill. Feb. 22, 2010) ("[T]he SPD cannot add a mandatory administrative appeal process to the Plan where the Plan is silent and then argue that [plaintiff] failed to exhaust those administrative remedies."); *see also Schwartz v. Prudential Ins. Co. of Am.,* 450 F.3d 697, 698–99 (7th Cir. 2006) (defendant could not rely upon language in the SPD granting it discretionary decision-making authority "which the plan itself does not confer").

Hughes contends that taken together, these challenges provide a more than sufficient basis to justify his delay in appealing the benefits termination.

Finally, Hughes contends that the doctrines of waiver, estoppel, and *contra non valentum*[2] should preclude LINA from arguing this suit is barred. In particular, Hughes states that he did not receive LINA's letter explaining that his appeal was denied and no other appeals would be considered until October 2014, after the August 2014 deadline for filing suit had passed. R. Doc. 20-1 at 12. While Hughes agrees that the Supreme Court has found such limitation periods enforceable, he argues that "if the administrator's conduct causes a participant to miss the deadline for judicial review, waiver or estoppel may prevent the administrator from invoking the limitations period as a defense." (quoting *Heimeshoff v. Hartford Life & Acc. Ins. Co.,* 134 S. Ct. 604, 615 (2013)). R. Doc. 20-1 at 13. According to Hughes, the reason he did not file this lawsuit until July, 2015 is because he did not receive LINA's letter denying his appeal until October 2014.

### C.  Plaintiff Hughes's Motion for Judgment based on Administrative Record

The first fifteen pages of Plaintiff's motion are virtually identical to his opposition discussed above. Again, Hughes argues that LINA abused its discretion in not allowing the appeal outside the 180-day window, and this suit should not be dismissed pursuant to the three-year contractual limitations period. In the final portion of his motion, Plaintiff explains the specific relief he is requesting, in particular, attorney's fees and prejudgment interest. R. Doc. 24-1 at 15.

Plaintiff argues that five factors support an award of attorney fees in this case. First, Hughes contends that LINA acted in bad faith, and Hughes can show at least "some success on the merits."

---

[2]     Plaintiff does not define this concept, or explain why it should apply in this case. *Contra non valentum* is based on the premise that equity and justice may require suspending prescription in some cases because the plaintiff was effectually prevented from enforcing his rights for reasons external to his own will. *Dominion Exploration & Production, Inc. v. Waters*, 972 So. 2d 350 (La. Ct. App. 4th Cir. 2007). However, this is a rare doctrine, and does not seem to apply in this case.

R. Doc. 24-1 at 15-16. Additionally, Hughes asserts that attorney fees are proper because LINA has the ability to pay the fee, such an award will have a deterrent effect, this case presents a significant legal question that impacts all plan participants, and finally Hughes will succeed on the merits. Plaintiff also argues that for many of the same reasons, prejudgment interest is appropriate in this matter.

### D.  Defendant LINA's Opposition to Plaintiff's Motion

In LINA's opposition it argues that Hughes was not excused from exhausting his administrative remedies, and this suit was not timely filed. First, it states that while Hughes contends the 180-day deadline was not included in his policy, he does not deny receiving the Summary Plan Description ("SPD"), or that the 180-day deadline was not included in that document R. Doc. 29 at 3.[3] LINA refutes Hughes's argument that conditions in the SPD are not part of the policy, and distinguishes the cases he cites in support of that proposition. R. Doc. 29 at 4. According to LINA, each of the cases Plaintiff cites addressed whether the SPD "expressly provided it was not part of the plan documents," and are therefore not applicable here. *Id*. Notably, LINA admits the SPD is not part of the administrative record in this case. R. Doc. 29 at 6. Apparently, no one can find it if it even existed.

However, LINA argues that even if Hughes did not obtain a copy of the SPD, he is bound by its terms, because Fifth Circuit law mandates that a plan participant is "bound by the plan's administrative procedures and must use them before filing suit even if they have no notice of what those procedures are." (citing *Bourgeois v. The Pension Plan for the Employees of Santa Fe Int'l Corps*, 215 F. 3d 475, 480 (5th Cir. 2000)). Additionally, LINA contends that Hughes did in fact

---

[3]      During oral argument, Plaintiff explained that he has been unable to obtain a copy of the summary plan description, and has no evidence that the 180-day limitation was included in that document.

have notice of the plan's administrative procedures, as it is undisputed this information was included in the letter terminating benefits. R. Doc. 29 at 10.

Next, LINA argues that a substantive award of benefits is not the appropriate remedy for a violation of ERISA's notice and disclosure requirements. Instead, LINA avers that the only appropriate remedy is a determination that Hughes did in fact exhaust his administrative requirements, and therefore would not have needed to wait 180 days before filing suit. R. Doc. 29 at 13-14. Addressing Hughes's argument that LINA abused its discretion in failing to find "just cause" that would excuse his delay, LINA contends that once the initial 180-day period passed, it had no obligation to consider such a voluntary appeal. (citing *Harvey v. Standard Ins. Co.*, 850 F. Supp. 2d 1269 (N.D. Ala. 2012); *DaCosta v. Prudential Ins. Co. of America*, 2010 WL 4722393 (E.D.N.Y. 11-12-2010) ("ERISA does not require insurers to provide or conduct voluntary appeals" and held that voluntary appeals are not subject to the same requirements as mandatory appeals.). Therefore, LINA avers that any determination regarding the voluntary appeal could not be an abuse of discretion. R. Doc. 29 at 15.

Turning to Hughes's argument that equitable tolling should bar LINA from applying the three-year contractual limitation deadline, LINA cites this Court's decision in *Jacobs v. Prudential Insurance Co. of America,*[4]:

> "Equitable tolling 'applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some other extraordinary way from asserting his rights.'" (internal citations omitted) Federal courts "sparingly" extend such relief. (internal citation omitted). Further, "a plaintiff who 'fails to act diligently cannot invoke equitable principles to excuse that lack of diligence.'" (internal citations omitted) "[A] garden variety claim of 'excusable neglect' does not support equitable tolling." (internal citations omitted) "Where [the plaintiff] could have filed his claim properly with even a modicum of due diligence, we find no compelling equities to justify tolling." *See generally Irwin*, 498 U.S. at 96 (noting that equitable tolling may apply where the claimant "has actively pursued his judicial remedies by

---

[4]    120 F. Supp. 3d 588, 596 (E.D. La. July 31, 2015).

> filing a defective pleading during the statutory period" or "has been induced or tricked
> by his adversary's misconduct into allowing the filing deadline to pass.")

Here, LINA contends there was no evidence of misrepresentation or any other circumstance to justify such extraordinary relief. R. Doc. 29 at 19.

Finally, LINA addresses Hughes's arguments in support of attorney fees in this case. First, LINA contends that there is no evidence LINA acted in bad faith, and rejects Hughes's contention that a 10-year-old report condemning LINA's practices in California supports a finding of bad faith. R. Doc. 29 at 20. While LINA admits it has the financial resources to satisfy an award, it disputes that such an award would have any deterrent effect in this case, as LINA acted in accordance with ERISA guidelines. R. Doc. 29 at 21-22. Additionally, LINA contends that this case does not involve a significant legal question, as any decision in this case will only impact Hughes, and attorney's fees would be inappropriate because Hughes will not succeed on the merits of his claim.

### E.  Plaintiff's Reply

In Plaintiff's reply, he re-asserts that the 180-day deadline cannot apply here because the deadline is not included within the policy. R. Doc. 36 at 1. In support of this position, Hughes explains that the insurance policy is the plan document, thus, any provision not included in the policy is unenforceable. R. Doc. 36 at 2. Additionally, Hughes argues that even if the SPD included such a deadline, it is LINA's burden to locate the SPD to prove such a provision existed. R. Doc. 36 at 4. Further, Hughes argues that such a letter would be inadmissible, as the Court is limited to reviewing the administrative record in ERISA appeal cases, and the SPD is not included in the record. R. Doc. 36 at 6.

Next, Hughes argues that he provided just cause to explain his delay in filing an appeal, as he explained the significant hardships his family was facing at the time. R. Doc. 36 at 11.

10

Further, Hughes contends that LINA has failed to demonstrate it was prejudiced by Hughes's late appeal R. Doc. 36 at 12-13. In particular, Hughes argues that because he is a paraplegic, LINA cannot possibly argue it was prejudiced when it did not receive updated medical records. R. Doc. 36 at 16-18. Finally, Hughes avers that the contractual limitation stated in the policy should not bar this suit because LINA indicated it was still considering allowing the appeal until October, 2014; thus the three year period did not begin until that time. R. Doc. 36 at 18.

### III.    LAW AND ANALYSIS

#### A.  Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id.* at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id.* at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are

insufficient to defeat a motion for summary judgment. *See Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *see also Anderson*, 477 U.S. at 249-50. In ruling on a summary judgment motion, however, a court may not resolve credibility issues or weigh evidence. *See Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). Furthermore, a court must assess the evidence, review the facts and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001); *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

### B.  ERISA Claims

Hughes's Complaint is brought pursuant to ERISA, and therefore the claim must be dismissed if he failed to exhaust all viable administrative remedies provided for in the LINA Plan. The Fifth Circuit has held that "[c]laimants seeking benefits from an ERISA plan must first exhaust available administrative remedies under the plan before bringing suit to recover benefits." *McGowin v. Manpower Int'l, Inc.*, 363 F.3d 556, 559 (5th Cir. 2004) (quoting *Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corp.*, 215 F.3d 475, 479 (5th Cir. 2000). One of the core policies behind this requirement is that "ERISA trustees, not federal courts, [should] be responsible for their ERISA actions so that not every ERISA action becomes a federal case." *Id.* The failure to exhaust administrative remedies under ERISA is proper grounds for a granting a motion for summary judgment. *Coop. Ben. Adm'rs, Inc. v. Ogden*, 367 F.3d 323, 336 (5th Cir. 2004). An untimely administrative appeal is similarly fatal to an ERISA claim. *Moss v. UNUM Provident Group Corp.*, 2015 WL 1508354, at *4 (W.D. La. Mar. 31, 2015).

When an insurer is both a plan administrator and a payor, the Court should evaluate whether a conflict of interest played a role in the decision to terminate benefits. "[W]hen judges

review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one." *Metropolitan Life Ins. Co. v. Glenn,* 554 U.S. 105, 117 (2008). Weighing a conflict of interest does not "impl[y] a change in standard of review, say, from deferential to de novo." *Id.* at 115. Instead, " 'conflicts are but one factor among many that a reviewing judge must take into account,' . . . the specific facts of the conflict will dictate its importance." *Holland v. Int'l Paper Co. Retirement Plan*, 576 F.3d 240, 247–48 (5th Cir. 2009) (quoting *Glenn* 554 U.S. at 117). "A conflict of interest should prove more important . . . where circumstances suggest a higher likelihood that it affected the benefits decision . . . It should prove less important (perhaps to a vanishing point) where the administrator has taken active steps to reduce potential bias and promote accuracy." *Glenn* 554 U.S. at 117. A court may afford more weight to a conflict of interest when the administrative process employed to render the denied claim indicated "procedural unreasonableness." *Id.* at 118; *Schexnayder v. Hartford Life and Accident Ins. Co.*, 600 F.3d 465, 469 (5th Cir. 2010). Procedural unreasonableness refers to a situation where the "method employed by the plan administrator to make the benefit decision was unreasonable." *Truitt v. Unum Life Ins. Co. of America*, 729 F.3d 497, 510 (5th Cir. 2013) (quoting *Schexnayder*, 600 F.3d at 469–71)).

The Fifth Circuit found a conflict of interest to be a minimal factor when a structural conflict of interest existed, but the conflict did not result in an economically-driven motivation to deny claims, and the administrator took steps to minimize conflict. *Holland*, 576 F.3d at 249. These steps included relying on the opinions of independent medical professionals when deciding claims. *Id*. Conversely, in *Schexnayder*, the Fifth Circuit weighed the conflict of interest factor more heavily when the "circumstances suggest[ed] procedural unreasonableness" because the administrator failed to address the Social Security Association's award of disability benefits in its

denial letters, and the administrator did not take steps to minimize the structural conflict of interest. 600 F.3d at 47071.

### C. Discussion

#### 1. Motion for Summary Judgment

To prevail on its motion for summary judgment, LINA must demonstrate that there is no dispute of material fact that Hughes failed to timely exhaust his administrative remedies. *See Celotex v. Catrett*, 477 U.S. 317, 322 (1986). The terms of the policy required policyholders to provide updated medical and financial information within thirty days of a written request from the insurer. Additionally, the plan provided a three-year contractual limitations period for filing suit. LINA contends that the plan also contained a 180-day time limit for filing appeal, and argues that because Hughes failed to file an administrative appeal within that period, he has failed to exhaust his administrative remedies.

However, the plan itself does not include a 180-day limit for filing an appeal. While LINA did include this limitation in the termination letter, R. Doc. 22-2 at 295, there is no authority to suggest that terms within a benefits termination letter can become binding policy provisions. Additionally, even if the 180-day limitation was included in the Summary Plan Description ("SPD"), the United States Supreme Court held "we cannot agree that the terms of statutorily required plan summaries (or summaries of plan modifications) necessarily may be enforced (under § 502(a)(1)(B)) as the terms of the plan itself. *CIGNA Corp. v. Amara*, 563 U.S. 421, 436 (2011); *see also Koehler v. Aetna Health Inc.*, 683 F.3d 182, 189 (5th Cir. 2012) ("Thus, *CIGNA* changes our case law to the extent that the plan text ultimately controls the administrator's obligations in a § 1132(a)(1)(B) action . . ."). Because the 180-day limitation was not included in the terms of the policy, it is not automatically an enforceable provision. Further, there is absolutely no evidence

14

the 180-day limitation was actually included in the summary plan description, as it is not in the administrative record and no one has been able to find or produce it. Under the terms of the policy, Hughes's administrative remedies required him to file an administrative appeal before filing a claim with this Court. Hughes filed two separate appeals. After receiving LINA's October, 2014 letter denying his second appeal, Hughes contacted an attorney, who subsequently filed a lawsuit with this Court. As such, Hughes complied with the administrative procedures described in the policies and there is no evidence to suggest Hughes did not exhaust his administrative remedies. Therefore, Defendant LINA's Motion for Summary Judgment must be **DENIED**.[5]

## 2. Motion for Judgment on the Administrative Record

Under ERISA, federal courts have exclusive jurisdiction to review determinations made by employee benefit plans, including disability benefit plans. 29 U.S.C. § 1132(a)(1)(B). A district court must generally limit its review to an analysis of the administrative record. *Vega v. Nat. Life Ins. Services, Inc.*, 188 F.3d 287, 300 (5th Cir. 1999). "[A] denial of benefits challenged under § 1132(a)(1)(B) is generally reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "[W]hen an administrator has discretionary authority with respect to the decision at issue, the standard of review should be one of abuse of discretion." *Vega*, 188 F.3d at 295.

When evaluating an appeal for denial of ERISA benefits, the Court must consider whether a conflict-of-interest played a role in the benefits denial. *See Glenn* 554 U.S. at 117. Under Fifth Circuit law, the Court "may afford more weight to a conflict of interest" when the denial appears

---

[5]      Because there is no evidence to support the 180-day limitation applied to this policy, Hughes is not required to demonstrate there was just cause for the delay to defeat summary judgment.

to be based on "procedural unreasonableness." *Id*. at 118; *Schexnayder v. Hartford Life and Accident Ins. Co.*, 600 F.3d 465, 469 (5th Cir. 2010). Here, LINA is both the plan administrator and the payer, which creates a potential conflict of interest, because LINA saves money every time benefits are terminated. A conflict of interest does not change the standard of review, but is one factor the Court should consider when evaluating the decision to terminate benefits. Because LINA had discretionary authority to determine benefit eligibility, the Court will review LINA's decision for abuse of discretion, while mindful of the inherent conflict of interest in this case.

It is undisputed that Hughes is permanently paralyzed. He is in frequent pain, suffers from additional complications arising from his injury, and has not shown substantial medical improvement. It is obvious he will never return to his work as an electrician. Despite this fact, LINA has denied his permanent disability benefits on at least **four** different occasions. This alone suggests "procedural unreasonableness." However, this is not the only troubling aspect of LINA's denial in this case. After terminating disability benefits for a permanently paralyzed policyholder, LINA relied on the 180-day limit for filing an appeal to bar Hughes's claim—despite the fact that 180 day limit is not located anywhere in the policy. Like the insurer in *Schexnayder*, LINA did not address Hughes's permanent paralysis or the Social Security Administration's award of permanent disability benefits. This suggests procedural unreasonableness. *See Schexnayder*, 600 F.3d at 47071.

Further, LINA admits that Hughes's benefits had been reinstated on three previous occasions, indicating the only reason his benefits were permanently denied in this case was that he missed the 180-day appeal deadline. As indicated above, because the 180-deadline is not included in the policy, it does not govern the plan procedures, and should not have been the basis of the benefits termination. These facts, viewed in light of the clear conflict of interest LINA has in this

16

case, demonstrates that LINA's denial was an abuse of discretion.

Next, LINA contends that this suit is untimely, as it was filed outside the three-year contractual limitations period included in the policy. Under the terms of the policy, "[n]o action will be brought . . . unless brought within three years after the time within which proof of loss is required by the policy." R. Doc. 22-1 at 27. Here, LINA initially terminated benefits in 2011. R. Doc. 22-2 at 294. Hughes attempted to file an appeal in July 2012, R. Doc. 22-2 at 194. On August 1, 2012, LINA wrote Hughes a letter explaining that "ERISA requires that you go through the Company's administrative appeal review process prior to pursuing any legal action challenging our claim determination." R. Doc. 22-2 at 190. It went on to explain that LINA was still determining whether the appeal would be accepted, and would let Hughes know when it reached a decision. Based on LINA's letter, Hughes was not entitled to file a legal claim contesting the benefits denial decision until LINA reached a decision regarding the appeal. A month later, on September 12, 2012, LINA notified Hughes that his appeal had been closed. At this point—not before—Hughes was on notice that he had exhausted his administrative requirements, and could file a claim in this action. Thus, the three-year contractual limitation period started, at the earliest, on September 12, 2012. As such, the present suit was timely, as it was filed July 24, 2015.[6]

Even if the Court accepts LINA's argument that the three-year contractual period began to run prior to the September, 2012 denial of Hughes's appeal, this suit is still timely under the doctrine of estoppel. The Fifth Circuit has recognized the theory of ERISA estoppel. *Mello v. Sara Lee Corp.,* 431 F.3d 440, 444–45 (5th Cir. 2005). To prevail on this theory, a plaintiff must show

---

[6]     LINA communicated to Hughes that his second appeal was being considered in 2014 and did not finally issue a denial of the appeal until October, 2014. While it is possible that the three-year contractual limitation period started anew as of that date, it is unnecessary to discuss that issue, as this suit was filed less than three years from the date Hughes's administrative appeal was denied.

17

three elements: "(1) a material misrepresentation, (2) reasonable and detrimental reliance upon that representation, and (3) extraordinary circumstances." *Nichols v. Alcatel USA, Inc.,* 532 F.3d 364, 374 (5th Cir. 2008) (citing *Mello,* 431 F.3d at 444–45). Here, LINA indicated it was still considering Hughes's appeal until it sent the letters[7] explaining that no additional appeals would be considered. Thus, LINA was either considering accepting the allegedly untimely appeal until September, 2012, or it made a material misrepresentation. If it was actually considering the appeal until September, 2012, the Court finds that the three-year statute of limitations would not have begun to run until that date.

However, even if LINA never actually considered the appeal, as it contends it was not required to do, Hughes believed the appeal was still pending, as LINA allowed plaintiff to submit additional information about this claim and told him he could not file a suit until he had exhausted his administrative remedies. Relying on this, Hughes did not obtain an attorney or file a lawsuit in this matter. Thus, Hughes detrimentally relied on LINA's material misrepresentation that the appeal would still be considered. As such, Hughes has established the first two elements of ERISA estoppel.

Finally, to prevail on the theory of ERISA estoppel, Hughes must demonstrate extraordinary circumstances. The Fifth Circuit has not defined what constitutes "extraordinary circumstances" for the purposes of ERISA estoppel. *See High v. E-Sys. Inc.*, 459 F.3d 573, 580 n.3 (5th Cir. 2006). However, the Third Circuit has explained that this "generally involve[s] acts of bad faith on the part of the employer, attempts to actively conceal a significant change in the plan, or commission of fraud." *Jordan v. Fed. Exp. Corp.*, 116 F.3d 1005, 1011 (3d Cir. 1997).

---

[7]     LINA sent two letters denying Hughes's appeal. The first, in September, 2012 and a second in October, 2014. Because this suit was filed within three years of September, 2012, it was timely, even if the appeal leading to the October, 2014 letter was insufficient to reset the three-year contractual limitations period.

Here, LINA denied benefits for a policy holder who was permanently paralyzed and receiving permanent social security benefits. Then, when Hughes appealed, LINA told him he could not file a lawsuit until he had exhausted his administrative remedies. After denying the appeal based on a nonexistent policy provision, LINA contends that Hughes cannot file a lawsuit because it falls outside the three-year contractual limitations window, despite the fact that LINA told Hughes he could not file a lawsuit as late as August 1, 2012. R. Doc. 22-2 at190.[8] While this conduct may not rise to the level of fraud or bad faith, the Court finds it demonstrates "exceptional circumstances" such that the doctrine of ERISA estoppel applies, and shall prevent LINA from arguing this suit was untimely. Thus, Plaintiff's Motion for Judgment on the Administrative Record is **GRANTED**.

In his motion, Plaintiff argues that in addition to retroactive reinstatement of benefits, both pre- and post-judgment interest, as well as attorney's fees, are appropriate in this matter. Plaintiffs can recover prejudgment interest in ERISA cases. *Perez v. Bruister*, 823 F.3d 250, 274 (5th Cir. 2016). "It is not awarded as a penalty, but as compensation for the use of funds." *Whitfield v. Lindemann*, 853 F.2d 1298, 1306 (5th Cir. 1988). Because ERISA does not mandate a rate for prejudgment interest, state law determines the applicable interest rate. *Perez*, 823 F.3d at 274. Under Louisiana law, interest is recoverable as a matter of right from the date of judicial demand. *Canova v. Travelers Ins. Co.*, 406 F.2d 410, 411 (5th Cir. 1969). Judicial interest rates are established pursuant to Louisiana Revised Statute 13:4202. *In re Complaint of MNM Boats, Inc.*, No. CIVA07-1938 C4, 2010 WL 1038264, at *1 (E.D. La. Mar. 17, 2010). The Court finds that in

---

[8]      In its October 1, 2014 letter denying Hughes's administrative appeal, LINA explicitly states "Please note that you have a right to bring legal action regarding your claim under [ERISA]." R. Doc. 22-2 at 130. Viewing those facts in the light most favorable to LINA, the contractual limitations period could not have begun to run from the initial benefits termination.

order to adequately compensate Hughes for his denied benefits, pre- and post-judgment interest is appropriate in this matter.

The parties disagree as to whether attorney's fees are appropriate in this case. The Court declines to reach a decision on the attorney fee issue at this time, and would like the parties to submit additional information regarding attorney's fees in this case. Therefore,

**IT IS ORDERED** that Defendant LINA's Motion for Summary Judgment, R. Doc. 20, is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff Hughes' Motion for Judgment on the Administrative Record, R. Doc. 24, is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant LINA's Motion to Strike Declarations, R. Doc. 37, and Motion for Leave to File Sur-Reply, R. Doc. 38, are **DISMISSED AS MOOT**.

New Orleans, Louisiana, this 22nd day of September, 2016.

UNITED STATES DISTRICT JUDGE

20